IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RICHARD T. POWELL,

                        Petitioner,

        v.                              CASE NO. 12-3119-SAC

JAMES HEIMGARTNER, et al.,

                        Respondents.

MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions of capital murder and criminal possession of a firearm arising from the shooting deaths of brothers Mark and Melvin Mims. He alleges that he was denied the effective assistance of counsel at trial and in post-conviction proceedings, that the trial court erred in requiring him to wear a stun belt during trial, and that he was denied due process by jury misconduct.

**Pending motions**

Two motions are pending before the court, petitioner's motion for a stay (Doc. 34) and the motion of petitioner's appointed counsel to withdraw (Doc. 36).

Petitioner's motion seeks a stay of this matter to allow him to return to state  court to present a new statement from a prosecution witness, who now recants his trial testimony. Respondents oppose the stay.

Generally, a federal court considering a request for a stay should consider whether the party seeking the stay has made a strong showing of a likelihood of success on the merits, whether the moving

party will be irreparably injured if the stay is not entered, whether the stay would substantially injure the opposing party, and the public interest at stake. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The court has considered these criteria and concludes that a stay is not warranted. First, the newly-recanted testimony, coming more than fifteen years after the trial, does not persuade the court that a strong likelihood of success exists. Such recantation generally is considered with suspicion by the courts. *See, e.g., United States v. Pearson*, 203 F.3d 1243, 1275 (10th Cir. 2000)("recanted testimony is properly viewed with suspicion"). Likewise, as respondents point out, there is no bar to petitioner presenting the claim to the state courts if no stay is entered, and indeed, it appears that he has done so. (*See* Doc. 36, p. 1.)("Petitioner indicates that he has filed a new habeas action pursuant to K.S.A. 60-1507 in state district court.") Because a stay in this matter would result in delay that is not grounded in a likelihood of success arising from new evidence, the court declines to stay this matter.

Next, petitioner's counsel move to withdraw from this matter. The court appointed counsel to assist petitioner following the filing of the motion to dismiss filed by respondents. Counsel prepared a response to that matter, and the court later denied the motion to dismiss and directed a response on the merits. The court's review comes to a close with this order, and the court grants the motion to withdraw.

**Background**

On July 15, 1999, petitioner was convicted in the District Court of Wyandotte County, Kansas, of capital murder in violation of K.S.A. 21-3439 and criminal possession of a firearm in violation of K.S.A. 21-404. He was sentenced to a term of life imprisonment for capital

murder and a consecutive term of 23 months for the firearm conviction.

The Kansas Supreme Court affirmed petitioner's convictions and sentence. *State v. Powell*, 56 P.3d 189 (Kan. 2002). On January 23, 2003, the time for seeking review in the U.S. Supreme Court expired, and the petitioner's convictions became final.

Petitioner filed a motion for post-conviction relief pursuant to K.S.A. 60-1507 on September 18, 2003. The district court dismissed the matter, but the Kansas Court of Appeals (KCOA) remanded it for additional proceedings. On January 18, 2008, the district court denied relief following an evidentiary hearing. The KCOA affirmed that decision, and the Kansas Supreme Court denied review on May 16, 2011. Petitioner filed the present petition on May 16, 2012.

The relevant facts are incorporated in the discussion.

**The claims**

The petition presents six grounds for relief:

(1) Trial defense counsel provided ineffective assistance of counsel by failing to object to the ruling requiring petitioner to wear a stun belt during trial.

(2) The trial court erred in denying relief in the state post-conviction action based upon defense counsel's failure to call an alibi witness on behalf of petitioner.

(3) The trial court erred in denying relief in the state post-conviction action based upon defense counsel's failure to discover or develop the motives of two prosecution witnesses.

(4) The trial court denied petitioner a fair trial by requiring him to wear a stun belt in front of the jury.

(5) The trial court erred in requiring petitioner to wear a stun

belt at trial in violation of his Sixth and Fourteenth
Amendment rights to participate effectively in his own
defense.

(6)   The trial court erred when it failed to poll jurors on
whether they saw a newscast during trial.

**Discussion**

*Standard of review*

This matter is governed by the Antiterrorism and Effective Death
Penalty Act of 1996 (AEDPA). The AEDPA established a "highly
deferential" standard of review and requires the habeas court to give
"state-court decisions … the benefit of the doubt." *Littlejohn v.
Trammell*, 704 F.3d 817, 824 (10th Cir. 2013)(quoting *Woodford v.
Visciotti*, 537 U.S. 19, 24 (2002))(per curiam). Under the AEDPA, a
petitioner is entitled to habeas corpus relief only if an adjudication
on the merits in the state's highest court "was contrary to, or
involved an unreasonable application of, clearly established Federal
law, as determined by the Supreme Court of the United States[.]", 28
U.S.C. § 2254(d)(1), or that decision was based upon an "unreasonable
determination of the facts in light of the evidence presented." §2254
(d)(2).   This deferential standard of review "reflects the view that
habeas corpus is a guard against extreme malfunctions in the state
criminal justice system, not a substitute for ordinary error
correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03
(2011)(internal quotations and citations omitted). Thus, a federal
court reviewing a state court decision in habeas corpus is "precluded
from issuing the writ simply because [it] conclude[s] in [its]
independent judgment that the state court applied the law erroneously
or incorrectly. Rather, [it] must be convinced that the application

was also objectively unreasonable." *McLuckie v. Abbott*, 337 F.3d 1193, 1197 (10th Cir. 2003)(citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

The court presumes the factual findings of the state court are correct unless petitioner rebuts the presumption by "clear and convincing evidence." 28 U.S.C. § 2254 (e)(1); *accord Welch v. Workman*, 639 F.3d 980, 991 (10th Cir. 2011).

*Ineffective assistance of counsel*

Petitioner claims he received ineffective assistance of counsel during both trial and post-conviction proceedings.

A claim of ineffective assistance of counsel is evaluated under the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner first must show that counsel's performance was deficient, a showing made by demonstrating that the performance "fell below an objective standard of reasonableness" and "was not within the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). The second part of the *Strickland* test requires the petitioner to demonstrate that but for the errors in representation, there is a reasonable probability of a different result in the criminal action. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In this analysis, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

In reviewing the state court's determination of a claim of ineffective assistance of counsel under the *Strickland* standard, the federal habeas court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the

benefit of the doubt." *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 13 (2013)(quoting *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1403 (2011)).

*Counsel at trial*

Petitioner contends that his trial counsel erred in failing to present a constitutional claim that requiring him to wear a stun belt at trial violated his rights under the Sixth and Fourteenth Amendments.

On the morning that the presentation of evidence began, the State, on behalf of the sheriff, asked that petitioner be required to wear a stun belt during the proceedings. The prosecutor identified several bases for the request, including petitioner's behavior while in pretrial detention, which included an assault with a weapon, and his removal from a proceeding in an unrelated civil matter due to his conduct. In response, petitioner's counsel argued that petitioner had caused no problems in earlier proceedings in the criminal case, including jury selection, and that the prosecution had not shown adequate grounds to support the request.

The trial court found sufficient cause for the request and required petitioner to wear a stun belt during trial. Two documents concerning the belt were made part of the record, namely, an authorization for use form and an inmate notification form, which petitioner refused to sign. After the belt was installed but before trial commenced, defense counsel argued that the belt, while likely not visible while petitioner was seated, would be visible when he was standing. The trial court found, based on its own observation, that the belt was not particularly obvious and rejected the argument. The belt was not activated during trial, and petitioner made no reference

to it during the colloquy on his decision not to testify.

On direct appeal, petitioner alleged the decision requiring him to wear the belt during trial caused him fear and anxiety to a degree that interfered with his ability to present a defense in violation of the Sixth and Fourteenth Amendments.

The Kansas Supreme Court found the constitutional claim was barred from review because it had not been presented at trial, but it considered the argument that the trial court abused its discretion by requiring him to wear the belt. After a detailed analysis, the court found that no abuse of discretion occurred. The court found that no prejudice had been shown, and it found that while petitioner had chosen not to testify, there was no showing that the presence of the stun belt was of any significance in that decision. *State v. Powell*, 56 P.3d at 201.

Petitioner also raised the claim of ineffective assistance of counsel in his post-conviction proceedings and cited the failure of trial defense counsel to present a constitutional argument in the opposition to the use of the stun belt. The district court stated that he had observed petitioner closely during the trial and did not find any prejudice from the presence of the belt.

In analyzing that claim, the Kansas Court of Appeals (KCOA) applied the correct, two-part *Strickland* standard. *Powell v. State*, 239 P.3d 114 (Table), 2010 WL 3853069, *6 (Kan. App. 2010), *rev. denied*, May 16, 2011. The KCOA held that while counsel failed to raise a constitutional challenge opposing the stun belt, the non-constitutional objection made by trial counsel effectively presented the ultimate issue. The KCOA found that the record clearly established that no prejudice occurred, *id*. at *9, and it concluded

that the outcome of the proceeding would have been the same had counsel raised the constitutional objection. Accordingly, it determined that counsel's performance was not deficient. *Id.*

This court finds no error in the state courts' rejection of these claims alleging ineffective analysis of counsel. First, the state appellate courts applied the correct standard. Second, the record shows the application of *Strickland* was reasonable and well-supported by the record, which showed that there were legitimate concerns about petitioner's potentially disruptive behavior, that there was no evidence that the belt was a factor in petitioner's decision not to testify, and that there was no evidence that the belt interfered with the trial in any way. Petitioner is not entitled to relief.

*Ineffective assistance claims in post-conviction proceedings regarding witnesses*

Petitioner also alleged ineffective assistance of counsel and other error in his post-conviction proceedings, citing trial counsel's failure to call an alibi witness and failure to discover or develop the motives of two witnesses who testified against him.

*The alibi witness*

Petitioner alleged that Flora Jean McElroy, if called, would have testified that they were together at the time the crimes were committed. According to petitioner, Ms. McElroy was at the trial and ready to testify. Defense counsel, however, had spoken to McElroy on several occasions and chose not to call her. According to petitioner, this was based, in part, on counsel's belief that the trial was going well. Petitioner admitted during post-conviction proceedings that problems with McElroy's credibility may have existed. *Powell v. State*, 239 P.3d, 114 (Table), **9-10 (Kan. App. 2010).

Following the evidentiary hearing, the state district court found the decision by counsel was a strategic decision and denied relief. The KCOA agreed that the decision whether to call a witness is a tactical matter and one within the province of counsel. Here, defense counsel had spoken with McElroy on several occasions, there were concerns with her credibility, and counsel believed the trial was going well. In addition, the KCOA found that petitioner offered no real factual support for his claims concerning McElroy. There was no statement or affidavit from her, nor did petitioner call his trial defense counsel as a witness during the post-conviction evidentiary hearing. *Id*.

*The prosecution witnesses*

Petitioner also alleged that defense counsel was ineffective in failing to discover and present possible motives of two witnesses who testified against him, Mylon Williams and Kenton "Reece" Williams.

Mylon Williams is petitioner's nephew. The Kansas Supreme Court summarized his trial testimony as follows:

> He testified after hearing gunshots, Powell came to their house and was spaced out, ranting and raving, talking crazy, jumping up and down, and calling himself a serial killer. Williams said Powell had a gun and claimed to have shot the Mims brothers. When asked why, he replied they had tried to rob him. *State v. Powell*, 56 P.3d 189, 191 (Kan. 2002).

Defense counsel questioned Mylon about differences between this testimony and his testimony at the preliminary hearing, where Mylon testified that petitioner "was muttering something like he shot him" and said that he was excited. *Powell v. State*, 239 P.3d 114 (Table), *2 (Kan.App. 2010).

Reece testified at trial about drug transactions, drug use, and

an argument between petitioner and Melvin Mims, one of the victims.
He also testified that he had seen petitioner with a handgun. On
cross-examination, defense counsel asked:

> "if he had seen a shotgun, if Melvin Mims had asked for a
> shotgun, or if Reece remembered Melvin saying he would kill
> Powell with a shotgun. Reece said he did not remember.
> [Defense counsel] brought out the fact that Reece had given
> a statement to police in which he said Melvin said he would
> kill Powell. He also asked Reece about his different
> testimony at the preliminary hearing." *Powell v. State*, *id.*

At the post-conviction evidentiary hearing, petitioner
testified that Mylon said he had received less time in exchange for
his testimony and had received some money from a tips hotline. He
testified that Reece said he testified against him to get out of a
possession of cocaine case and had received a plea bargain on a
burglary charge. On cross-examination, however, the State showed that
Reece had pled no contest in the cocaine case and served time, that
his plea agreement did not require him to testify, and that the
burglary charge in question was resolved, and Reece was sentenced,
prior to the murders of which petitioner was convicted. The State
maintained that no deals were made in exchange for testimony, and
neither Mylon nor Reece testified at the post-conviction proceedings.

The KCOA determined that there was no error in the district
court's determination that petitioner had not shown ineffective
assistance. While it stated that counsel "probably should have filed
a discovery motion", it noted that petitioner had filed such a motion,
and it pointed out that the State had the obligation to disclose any
lenience offered to witnesses. *Id.* at *10.

Under *Strickland*, the habeas court must "presume that an attorney
performed in an objectively reasonable manner because his conduct

might be considered part of a sound strategy." *Bullock v. Carver*, 297 F.3d 1036, 1051 (10th Cir. 2002).

The decision to call or not to call McElroy as an alibi witness was one squarely within the province of defense counsel. *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.")

Likewise, the alleged failure to develop additional information concerning the motives of prosecution witnesses must be viewed with deference. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 690-91.

The Kansas appellate courts carefully reviewed petitioner's claims under the appropriate legal standards, and their decisions reflect a reasonable application of those standards to the facts developed. Those decisions must be sustained.

*Use of stun belt*

Petitioner claims the state district court denied him a fair trial by requiring him to wear a stun belt in the presence of the jury.

The Kansas appellate courts addressed this point primarily in

the context of petitioner's claim of ineffective assistance of counsel. However, the courts thoroughly examined petitioner's challenge to the use of the stun belt, and the record reflects their careful consideration of the merits.

The leading Supreme Court case in this area appears to be *Deck v. Missouri*, 544 U.S. 633 (2005). In that case, the Supreme Court considered the use of shackles on a convicted offender during the penalty phase of a capital proceeding. It determined that the Fifth and Fourteenth Amendments prohibit

> the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial. *Deck*, 544 U.S. at 629.

The *Deck* Court identified three principles supporting this decision: first, a criminal defendant is presumed innocent; second, the defendant's access to counsel must be protected; and third, the dignity of the judicial process itself must be maintained. *Id.* at 630-32.

Following *Deck*, the Tenth Circuit found that "requiring a defendant in a criminal trial to wear a visible stun belt, like restraining him with visible shackles, may erode a defendant's constitutional presumption of innocence." *United States v. Wardell*, 591 F.3d 1279, 1293-94 (10th Cir. 2009). However, the *Wardell* court cautioned that a court "should not 'presume prejudice' when there is no evidence that the jury noticed the [restraints]." *Id.* at 1294

(quoting *United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000)).

The Kansas Supreme Court considered *McKissick* in its 2002 review of petitioner's direct appeal, *State v. Powell*, 56 P.3d at 200-201, and the KCOA in 2010 articulated the appropriate standard in *Powell v. State*, saying "the constitutional issue comes down to whether the trial court abused its discretion under the facts of the case." 230 P.3d at *9.

Because the Kansas appellate courts applied the appropriate legal standards in a reasonable manner, petitioner is not entitled to relief.

*Refusal to poll jurors*

Petitioner claims the trial court erred in refusing to individually poll the jurors concerning a television newscast one evening during the trial[1]. Petitioner's counsel and some court personnel saw the broadcast. The trial court had repeatedly admonished the jury to avoid media content concerning the trial, and it again did so after petitioner brought the matter to the court's attention. Petitioner did not make any further objection or seek a poll of the jury. *State v. Powell*, 56 P.3d at 201-02.

The Kansas Supreme Court rejected this claim on petitioner's direct appeal, citing Kansas case law that conducting a poll would draw attention to the report and increase the likelihood of prejudice.

In *Tyler v. Nelson*, 163 F.3d 1222 (10th Cir. 1999), the Tenth

---

[1] The broadcast mentioned petitioner's earlier homicide conviction.

Circuit rejected a similar claim by an applicant for habeas corpus relief. The court recognized that a trial court has "a duty to protect the jury from prejudicial events" and "to investigate any potential prejudice that may have occurred" prior to or during trial. *Id*. at 1230 (citations omitted). However, where the petitioner had made no showing that the trial was contaminated, where there was no evidence that the jurors saw the news broadcast, and where the trial court had repeatedly admonished the jury to avoid media accounts of the trial, the court found no basis for habeas corpus relief on due process grounds. *Id*. (citing *Chandler v. Florida*, 449 U.S. 560, 582 (1981))("In short, there is no showing that the trial was compromised by [the television broadcast].")

The court finds the reasoning in *Tyler* is persuasive authority for the present case. Petitioner made no showing that any juror had seen the broadcast, the trial court had repeatedly warned the jury to avoid media accounts related to the proceedings, and there was no evidence of any impact on the fairness of the trial. The decision not to poll the jury does not warrant relief in habeas corpus.

### Conclusion

For the reasons set forth, the court concludes petitioner is not entitled to habeas corpus relief.

Finally, the court must consider whether to issue a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant." The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253. A petitioner meets that standard by showing that the issues presented are debatable among jurists, that a court could resolve the issues differently, or that the issues deserve further consideration. *Slack v. McDaniel*, 529 U.S. 473 (2000)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

The court concludes that petitioner has not made a substantial showing of the denial of a constitutional right and therefor declines to enter a certificate of appealability.

IT IS, THEREFORE, BY THE COURT ORDERED the petition for habeas corpus is denied.

IT IS FURTHER ORDERED petitioner's motion to stay (Doc. 34) is denied.

IT IS FURTHER ORDERED the motion to withdraw (Doc. 36) is granted.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED:  This 15th day of September, 2015, at Topeka, Kansas.


S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge